UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

D.W.M., a minor by Willie Moore, his father,          2:18-cv-3099(DRH)(GRB)
and Ursula Moore, his mother;
D.D.M., a minor by Willie Moore,
his father, and Ursula Moore,
his mother, and WILLIE MOORE and URSULA
MOORE,

                                    Plaintiffs

              -against-

ST. MARY SCHOOL, BIAGIO M. ARPINO,
Principal of St. Mary School, and THE ROMAN
CATHOLIC DIOCESE OF ROCKVILLE CENTRE,
L.M., M.J., and M.M., infants by their respective
parents and natural guardians, KERRI
LECHTRECKER, individually and as the mother
of L.M., an infant, and E.G.M.
(initials by Order of the Court), individually
and as the father of L.M., an infant;
"MIKE" JONES and CHRISTINE JONES, individually
 and as parents and natural guardians of M.J.,
an infant; and KRZYSZTOF MARS and
DOROTA MARS. Individually and as the
parents and natural guardians of M.M., an infant,

                                    Defendants.

-------------------------------------------------------- x

## MEMORANDUM

This memorandum is respectfully submitted in support of the motion by

the defendant St. Mary School, Biagio M. Arpino, and The Roman Catholic Diocese Of

Rockville Centre to dismiss the action in its entirety pursuant to FRCP12(b)(1) based

upon the lack of subject matter jurisdiction and pursuant to FRCP12(b)(6) based upon the

failure to state a claim upon which relief can be granted and for such other and further

relief as this Court may deem just and proper.

## STATEMENT OF FACTS

The factual allegations set forth in the plaintiff's fourth amended verified complaint annexed hereto as **Exhibit "A",** which identical to the second amended complaint dated June 1, 2018, can be divided into two (2) categories. The first category contains statements of fact and the second category contains allegations which are all together conclusory, speculative, and conjectural or are simply untrue. The plaintiff bases jurisdiction on 42 USC Sections 1981, 1983, 1985, 1986 and 2000a and 2000d. As will be seen, the factual allegations set forth in the pleading do not support a claim under Sections 1983, 1985 and 1986 as they do not provide a basis upon which it can be found that St. Mary School, Biagio M. Arpino or the Roman Catholic Diocese of Rockville Centre (hereinafter referred to as the Institutional Defendants) were acting under color of State law or that any of the conduct alleged conduct could be considered State action required under these statutes. With respect to 42 USC sections 1981, 2000a and 2000d, the factual allegations are either insufficient and fail to state a claim upon which relief can be granted or are merely labels, conclusions or naked assertions. The following is a summary of the factual allegations contained in the fourth amended complaint.

Offensive images were initially sent on December 17, 2017 by co-defendant LM off of the school campus in his home after school hours between 4:45 and 4:48 p.m. to the plaintiff at his private home (see complaint paragraphs 90 – 95). The plaintiff admits that this episode was not reported to his parents or the school. (see complaint paragraph 102). The next series of events pertain to the transmission of images on April 12, 2018. Once again co-defendant LM and the plaintiff were voluntarily engaged and participating in a chat room when these images were sent. Once

1

again the images were sent off of school property by the codefendant LM at his home computer, after school hours between 6:29 p.m. and 7:16 p.m. (see complaint paragraphs 103 – 109). Upon discovery Mrs. Moore sent an e-mail to Theresa Gelling, the 7th and 8th grade science teacher notifying her as to what had occurred. Immediately thereafter Mrs. Gelling sent e-mails to codefendant LM's mother to remove the images at once and review all of LM's prior postings. She also sent notifications to Mr. Arpino and Mrs. Ceramello (assistant principal). Mrs. Gelling advised Mrs. Moore that such conduct was absolutely unacceptable and that the school would do everything to protect DWM. Mrs. Moore was also advised to speak with Toni Anne Rossi (part of the administrative team at St. Mary School). (see complaint paragraphs 111 – 115).

On April 20, 2018 a letter was sent by Mr. Arpino to Mr. & Mrs. Moore summarizing the schools response through April 20, 2018. The correspondence indicates that an evaluation by the administrative team, teacher and Diocesan administrators was conducted on the very next school day which was April 16, 2018. All students were questioned. All students were given appropriate disciplinary measures. Steps were taken to separate DWM from LM. All teachers and staff members were advised to oversee the students to prevent further negative interactions. Parents of all students were contacted with recommendations for actions at home to address students' behavior and that all families and students had complied with the school's recommendations. (see correspondence from Mr. Arpino to Mr. & Mrs. Moore dated April 20, 2018 annexed hereto as **Exhibit "B"**).

Further facts pertain to the policies of the school as set forth in the parent student handbook as set forth in paragraphs 209 – 214 in the complaint. Pursuant to the

handbook, any use of technology that may be found by St. Mary School faculty to be offensive, harmful, destructive or inappropriate is forbidden." "Each student is responsible for his/her own behavior while using technology." "Codes of conduct exist for students, staff and volunteers and policies are in place to create a safe environment in our schools free from harassment, discrimination or any form of abuse." Prevention training is mandatory for all staff and all students are given instructions on the definition of abuse, how to report it and are trained with respect to safety skills. "St. Mary School will not tolerate the use of ethnic or racial remarks directed towards anyone." (See complaint paragraphs 209-214).

The following allegations are merely labels, conclusions, naked assertions or wholly speculative in nature. Mr. Aprino and the Diocese of Rockville Centre knew or should have known the student defendants showed an overt racist Nazi attitude towards DWM because he was black. (see complaint paragraph 60 and 61). The institutional defendants tolerated, condoned and facilitated the attack. The institutional defendants facilitated access to discord. The institutional defendants facilitated and condoned racial animus against blacks and created a racially hostile environment. (see complaint paragraphs 69 – 72). These allegations are wholly conclusory and no examples are provided. The plaintiffs go on to allege that the school knew that defendant LM was antisocial and dangerous and the school did not punish racial harassment in general. (see complaint paragraph 79 – 81). Once again no examples are provided. The plaintiff claims that there was no separation, that school measures were insufficient and that the school ignored continued racial harassment both physical and electronic after April 20, 2018. (see complaint paragraphs 123 – 130). Once again these allegations are

3

conclusory or untrue and no examples are given.  The entire section on conspiracy and cover up in paragraphs 134 – 139 is wholly conclusory.

In paragraphs 165, 172 – 174 the plaintiff alleges that the school did not enforce its policies equally and that DWM was subject to discriminatory treatment without providing any examples and are mere naked assertions.  The same is true with respect to paragraph 197 where the plaintiff concludes that blacks and whites were treated different under the parent student handbook.  The plaintiffs incorrectly state that the student defendants were not expelled, thus violating the handbook in paragraph 201.  However there is no provision in the handbook which requires automatic expulsion under these circumstances.  In paragraph 217 the plaintiffs state that the institutional defendants did not take appropriate action as per the handbook however the plaintiffs do not and cannot site to anything in the handbook which specifies the appropriate action which was not taken.

The plaintiffs allege that the institutional defendants did not investigate properly because of race and that there was a pattern of disproportionate disciplinary action based on race.  (see complaint paragraphs 220 – 221 and 263).  Once again these merely naked assertions without any examples.

Additional facts concerning what transpired at the school subsequent to the school becoming aware of the cyber attack in April 2018 are set forth in the defendants' **Exhibits "C", "D", "E" and "F"** consisting of the affidavit of Toni Ann Rossi (part of the administrative team), software data, e-mail from Ms. Rossi to all teachers dated April 18, 2018 and letter from Mr. Arpino to defendant LM's mother dated April 20, 2018 respectively.  As per the affidavit of Ms. Rossi, action was taken

4

immediately over the weekend of April 14th and April 15th after the school became aware of the situation by communicating with all necessary administrators, parents, teachers and technology personnel. On Monday April 16th, the director of technology, Ms. Guarnieri advised the administrators that the discord website was accessed at home on the students' personal devices and could not be reached on the school's server because of website software. (See computer printout annexed hereto as **Exhibit D**). All students were interviewed by Ms. Rossi, Ms. Guarnieri and Cathy Razzetti (assistant education superintendent for the Diocese). Mr. Arpino participated in this conference call with the Diocese and the St. Mary's administrators.

Defendant LM received in school suspension and was removed from all classes with DWM for the remainder of the year and all of his privileges to attend afterschool activities such as the graduation ceremony, graduation dance, the 8th grade school trip and the 8th grade dinner cruise were revoked. Defendant LM was not to have lunch in the cafeteria with the other 8th graders but was to eat lunch in isolation either in the main office or in the nurse's office. Defendant LM's outside psychologist was contacted so that the misconduct could be appropriately addressed and incorporated into the behavioral interventional plan. The school was given authorization to communicate with the psychologist and defendant LM's continued enrollment in St. Mary School was contingent upon his continued attendance and participation in weekly therapy.

The parents of defendant MJ and defendant MM were notified that MJ and MM were not to attend the evening band festival/art show and were told to remain home from other afterschool functions. DWM was counseled on safety and what to do if he felt unsafe or mistreated and was told to go immediately to the nurse should any further

issues arise.  There was a meeting with Mrs. Moore at the school to share with her what was going on.  All faculty and staff were told to watch the interactions between DWM, defendant MJ and defendant MM.  DWM and defendant LM were no longer to be together for any reason.

On April 18, 2018 all teachers were notified once again by e-mail from Ms. Rossi that the defendant LM and plaintiff DWM were to be separated for the remainder of the school year (see e-mail dated April 18, 2018 annexed hereto as **Exhibit "E"**).  On April 20, 2018 Mr. Arpino sent a letter to the mother of defendant LM stating that LM had received in school suspension, was being assigned to a different section for his classes, that the school was in contact with LM's psychologist and that should there be any further instances warranting strong consequences, LM may be expelled from school.  (see correspondence from Mr. Arpino to Ms. Lechtrecker dated April 20, 2018 annexed hereto as **Exhibit "F"**).  On April 26, 2018 Ms. Rossi contacted defendant LM's psychiatrist regarding his progress and confirmed the LM was continuing to see the psychiatrist every Thursday.

## ARGUMENT

### I
### THE PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER 42 USC SECTIONS 1983, 1985 AND 1986

Claims arising under Article 14 of the United States Constitution apply to acts of the States and not to acts of private entities.  Section 1983 was enacted to enforce 14th Amendment rights and prohibit interference with Federal rights under the color of State law.  It doesn't matter if the plaintiff's rights were violated or denied due process.  The question is whether there is State action if not the inquiry ends.  Rendell-Baker v.

Kohn, 457 US 830, 839, 102 S.CT. 2764 (1982). This applies equally to claims arising under Sections 1985 and 1986. Fundator v. Columbia Univ., 1996 WL 197780 (S.D.N.Y. 1996). Rendell-Baker, involved a private school which received State and Federal funds comprising ninety (90) to ninety-nine (99) percent of its budget. The Court held that receipt of ninety (90) to ninety-nine (99) percent of operation funds did not make the firing of the vocational counselor an act of the State. Rendell-Baker, at 840. The decision to fire was not compelled or influenced by State regulation. Under the Public function test the question is not whether the private entity serves a public function or whether the private entity performed a public function. There has to be a symbiotic relationship such as when an entity like a restaurant is operating on public property and the State profits from the discriminatory acts of the restaurant. Rendell-Baker, at 842, 843.

In Deshaney v. Winnebago Co. Dep't of Social Services, 489 U.S. 189, 109 S.CT. 1998 (1989) a minor who was abused by his father sued the social workers and the local officials for failure to intervene and remove the boy from the father's custody. The action was brought under Section 1983 based upon deprivation of liberty and due process. The Court explained that the State was not required to protect citizens from private violence not attributable to the conduct of its employees. The Fourteenth Amendment does not require the State to protect citizens against private acts. Deshaney, at 196. The failure of the State to protect a citizen against private violence does not constitute a violation of due process. Deshaney, at 197. In the instant action the violence complained of was not perpetrated by any of the employees of the institutional defendants. It is respectfully submitted that the institutional defendants had no

7

constitutional duty to protect the plaintiff from cyber bullying.   The fact that the cyber bullying occurred off of school property and not during school hours while the various students were under the supervision of their respective parents does not constitute a violation as to the institutional defendants of due process under Article 14.   See Deshaney, at 202.

The Fourteenth Amendment is directed to the States.   State action is the necessary predicate for application of due process.   It is a two (2) part test.   The plaintiff must first show a deprivation of a constitutionally protected right and that the defendant was acting under the color of State law.   Lugar v. Edmondson Oil Co., 457 U.S.922, 928 and 931, 102 S.Ct.2744 (1982).   The State action requirement must be carefully adhered to because it preserves freedom by limiting the reach of Federal judicial power.   Lugar, at 937.

In deciding whether a private institution is acting under the color of State law, the State action and not the private action must be the subject matter of the complaint.   Stewart v. NYU, 430 F.Supp. 1305, 1310 (S.D.N.Y. 1976).   There are five (5) factors in determining whether or not there was State action.   One factor is the degree of government aide, however there must be a nexus between the aide and the discriminatory conduct.   The next factor is the extent of the government regulation.   The question is whether or not the State controlled the conduct complained of.   Next, was there State approval of the challenged actions.   The fourth factor is public function.   The Court's have repeatedly rejected the argument that the school provides a public function simply by education of its students.   Stewart, at 1312 citing Weiss v. Syracuse Univ., 522 F.2d 397 (2nd Cir. 1975).   The fifth test is whether the offensive nature of the conduct

8

outweighs the private status claim.  For a discussion of these factors see <u>Stewart</u>, at 1311 to 1312.

As to public function, as in <u>Stewart</u>, the Supreme Court held in <u>Jackson v. Metropolitan Edison Co.</u>, 419 US 345, 354, 95 S.Ct.449 (1974) that serving a public interest has been rejected as a basis for bringing a claim under 1983.  If such were the case all businesses and professions could be deemed to be serving a public interest and would therefore be continuously tied up in constitutional litigation.  The Second Circuit has specifically rejected the notion that providing education necessarily constitutes State action.  <u>Graffon v. Brooklyn Law School</u>, 478 F.2d 1137, 1141 (2nd Cir. 1973).  In <u>Graffon</u>, students were expelled for academic deficiency.  The claims under 1983 were dismissed based upon lack of jurisdiction and lack of State action.  The defendant's decision to dismiss was not under color of State law.

It is respectfully submitted that whatever disciplinary actions were taken by the institutional defendants, they were internal matters affecting the operation of the school with no relationship to State action whatsoever.  The fact that a school performs a public function by providing an education does not render its conduct State action. <u>Grossner v. Trustees of Columbia Univ.</u>, 287 F.Supp. 535, 547, 548 (S.D.N.Y. 1968).  If all private schools were deemed to be acting under color of State law simply by providing an education, the difficult problem with providing aide to parochial schools would not exist.  Therefore the idea that an educational facility is a public function has been rejected by the Federal judiciary.  <u>Hult v. Notre Dame High School of Westhaven</u>, 456 F.Supp. 1145 (D.Conn. 1978) at 1150 citing <u>Grossner</u> above.

With respect to funding, the Court has never held that discrimination by a private party that receives any sort of benefit from the State or is subject to State regulation is enough to form the predicate for federal jurisdiction under the Fourteenth Amendment.  <u>Moose Lodge No. 107 v. Irvis</u>, 407 U.S.163, 174, 92 S.Ct.1965 (1972). Similar Courts have held that private schools are not State actors even if they receive a large proportion of their budget from State funding, are subject to extensive State regulation and serve a public function.  <u>Broom v. Saints John Newman and Maria Goretti Catholic High School</u>, 722 F.Supp. 2d 626 (E.D.P.A. 2010) at 630.  In <u>Grossner</u>, cited above, students brought an action to restrain disciplinary proceedings.  Twenty-five (25) percent of Columbia's budget was from State funding and it was held that this was not enough to render it a State actor.  <u>Grossner</u>, at 547 to 548.

With respect to government regulation, simply because a business is subject to regulation does not make its acts State acts for purposes of the Fourteenth Amendment.  <u>Jackson v. Metropolitan Edison, Co</u>., 419 U.S.345, 350, 95 S.Ct. 449 (1974).  Once again returning to <u>Grossner v. Trustees of Columbia Univ.</u>, cited above, the issue concerned the internal disciplinary proceedings of the school.  The Court found that there was nothing to suggest any interconnection between the State and the school.  The students in that case were also seeking a preliminary injunction.  The Court held that the total absence of any State involvement with the disciplinary proceedings required dismissal.  There must be an intertwining and inseparability of the government facilities resources and action with the private agency.  In other words there has to be State involvement with the discriminatory action under attack which is not the case in the instant action.  <u>Grossner</u>, at 548.

Finally, in <u>D.T. v. Somers Cent. Sch. Dist.</u>, 588 F.Supp.2d 485 (S.D.N.Y. 2008) the plaintiff sued a school district for emotional harm due to a racist environment under Section 1983 and 2000. The court held that claims brought under Title VI pursuant to 42 U.S.C. 2000(d) are sufficiently comprehensive and preclude a plaintiff from bringing Title VI claims and preclude a plaintiff who brings a Title VI claim from also bring a Section 1983 claim when the same facts are alleged in both claims. The Court states that this is the law in the Second Department. <u>D.T.</u>, at 498. The Court explained that Section 1983 claims are subsumed by title VI as to institutional defendants. Furthermore, title VI claims do not even apply to individuals. <u>D.T.</u>, at 498. As such it is submitted that any title VI claim should be summarily dismissed as to Mr. Arpino. As the plaintiffs have brought claims under title VI in this case based upon the same facts and circumstances as the claims brought under Section 1983, the claims must be summarily dismissed in accordance with the law in the Second Circuit.

Aside from the fact that claims under 1983 cannot be maintained when claims are also brought under title VI based upon the same facts and circumstances, it is clear from this record that St. Mary School is a private parochial nondiscriminatory elementary school which was caused to address an episode of cyber bullying which was performed by the alleged tortfeasors, who were co-students of the plaintiff, while not under the control and supervision of the school. The cyber bullying occurred off school property at the individual private homes after school hours. The school took immediate action as outlined in the statement of facts. The case against the institutional defendants involves disciplinary proceedings which were not to the satisfaction of Mr. & Mrs. Moore. There is nothing in the pleadings nor can there be to suggest that when the

institutional defendants carried forth its disciplinary plan, it was acting under color of state law.  In fact, the State specifically withdraws from direction and control over such internal matters.

In the State of New York private schools are afforded broad discretion in conducting their programs including decisions involving the discipline, suspicion and expulsion of their students.  Khaykin v. Adelphia Academy of Brooklyn, 124 A.D.3d 781 (2nd Dep't 2015), see also Hutchinson v. Grace Lutheran School, 132 A.D.2d 599 (1987); Ibibe v. Pratt Institute, 151 A.D.3d 725 (2nd Dep't 2017);  Matter of VanHouten v. Mount St. Mary Coll., 137 A.D.3d 1293 (2nd Dep't 2016).

The claims under Sections 1985 and 1986 must also fail based upon the lack of State action.  In addition, claims regarding conspiracy, must be completed with specificity.  The pleadings in this case contain only conclusory statements that by the mere fact that other governmental agencies did not intervene at the request of the plaintiffs, there must necessarily have been some kind of conspiracy between those public agencies and the institutional defendants.

**II**
**CLAIMS UNDER 42 USC 1981, 2000a and 2000d MUST BE DISMISSED BASED UPON THE FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Portions of Section 1981 reach purely private acts when it comes to racial discrimination with respect to rights enumerated in Section 1981 such as transactions including contracts, the purchase of real estate, and private employment.  Runyon v. McCrary, 427 U.S. 160, 169 – 170, 96 S.Ct. 2586 (1976).  Section 1981 is violated only when plaintiff is denied the right to contract because the party is black.  McCary v. Runyon, 515 F.2d 1082, 1088 (Fourth Cir. 1975).  In the instant case, the plaintiff DWM

12

was not denied anything.   There was no affirmative act on the part of the institutional defendants to deny him an education or any of the other benefits provided to his classmates which were part and parcel with his attendance at the school.   The plaintiffs simply argue that since the disciplinary action was not good enough it adversely affected the remaining weeks left in his 8th grade school year.   However these are expressions of opinion and not expressions of fact.   They are not expressions of intentional discriminatory actions on the part of the institutional defendants.

In the case of Spikes Bell v. Continental School of Beauty, 11 F.Supp.3d 403 (W.D.N.Y. 2014), the court noted that even though a case may arise under Section 1981, there must be sufficient facts to support an inference that there was  purposeful discrimination and not that the complaining party simply disagreed with the disciplinary measures.   Spikes Bell v. Continental School of Beauty, 11 F.Supp.3d 403 (W.D.N.Y. 2014).   A plaintiff may not rely on labels and conclusions or recitations of the elements of a cause of action.   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007).

In the case of Turner v. Nazereth College, 211 WL 310787 (W.D.N.Y. 2011) the Western District provided thorough analysis as to the application of Section 1981 in a case which was on point factually.   First of all, the Court does not have to accept allegations that are contradicted by documents upon which the complaint relies. In this case the plaintiff cites to the school handbook as evidence of an alleged breach of contract.   The handbook makes it clear that St. Mary School is a nondiscriminatory institution.   The handbook does not provide for specific consequences or disciplinary actions with respect to the conduct complained of in this action or any misconduct for

that matter.  It is totally left up to the school administrators to determine the appropriate consequences.  In order to survive the motion the alleged facts need to be more than just labels and conclusions.  See also <u>Fundator v. Columbia Univ.</u>, 1996 WL 197780 (S.D.N.Y. 1996) and <u>Bishop v. Toys R Us-N.Y.L.L.C.</u>, 414 F.Sup.2d 385, 391 (S.D.N.Y. 2006).  (plaintiff may not plead naked assertions but must plead specific events that constitute intentional discrimination).

In Turner, the educational institution did not grant the plaintiff a degree or recommend her for a certification.  The plaintiff claimed that the actions were racially motivated and that she was provided a racially hostile environment.  The allegations were held to be insufficient and that they amounted to nothing more than claims of educational malpractice.  The racial allegations were too conclusory.  The Court held that complaints regarding subjective professional judgments are insufficient to state a claim under 1981. The plaintiff must do more than just recite conclusory assertions and can't simply allege that other whites were not treated the same way.  The plaintiff needs to assert facts and circumstances to show intentional discrimination with examples of how the plaintiff was treated differently than other similarly situated is necessary.   One cannot merely speculate that the plaintiff was treated differently than white students.  Claims of educational malpractice are not cognizable under Section 1981 and claims which actually sound in tort rather than breach of contract are subject to dismissal.  The claims will not survive simply because they are couched as breach of contract claims.  Once again, in the instant action, the plaintiff cannot point to any specific obligation in the student handbook or promise that was breached.

14

Under Section 1981 the plaintiff must plead facts which show intentional discrimination. Facts must be pleaded that show race was the reason for the conduct. Burgin v. Toys R Us Nytex, Inc., 1999 W.L. 454302 (W.D.N.Y. 1999). Naked assertions aside, the school did not facilitate the use of the Discord website by the students. This social chat room was, on the other hand, blocked by the school's software. The cyber bullying occurred unbeknownst to the institutional defendants who had no control over the situation and took immediate action upon notice. The type of disciplinary action taken was based upon the professional judgment of the administrators. Whether or not the response by the institutional defendants was adequate is not a question for review under Section 1981. No facts have been alleged which show intentional discrimination on the part of the institutional defendants. Furthermore, as stated in <u>Burgin</u>, unanticipated and disapproved discriminatory acts cannot be imputed to an employer under a theory of vicarious liability. By the same token, the alleged cyber bullying cannot be imputed to the school especially since the activity did not occur while the alleged perpetrator was under the supervision and control of the school.

In <u>Yusuf v. Vassar College</u>, 35 F.3d 709 (2nd Cir. 1994) Vassar College refused to admit a student to a PhD. Program. The plaintiff brought claims against the college under Section 1981. Once again the Court stated that the complaint must specify events of an intentional discrimination and circumstances that evidence discriminatory intent. When claims under Section 1981 are vague conclusory and contain non-discriminatory reasons the claims must be dismissed. <u>Yusuf</u>, 713, 714. As in the case at bar, the plaintiff student was simply unhappy with the grades he received and the

15

college's refusal to admit him to the PhD. Program. The Second Circuit stated that it is not the Court's business to second guess the school's decisions.

42 USC 2000(a) pertains to cases involving discrimination or segregation in places of public accommodation. It is submitted that the intuitional defendants do not fall within the meaning of places of public accommodation within the statute. The statute pertains to establishments "affecting interstate commerce or supported in their activities by State action as places of public accommodation; lodging; facilities principally engaged in selling food for consumption on the premises; gas stations; places of exhibition or entertainment; other covered establishments." 42 USC Section 2000(a)(b). Section (b)(1), (2), (3) and (4) set forth the type of establishments that if supported by State action, fall within the prevue of the statute. They include Inns, hotels, motels, other establishments providing lodging, restaurants, cafeterias, lunch rooms, lunch counters, soda fountains or other facilities principally engaged in selling food, movie theatres, concert halls, sports arenas, stadiums and other places of entertainment or any establishment physically located on the premises of another establishment otherwise covered by the statute. The institutions must also be either engaged in interstate commerce or supported by State action. It cannot be said that St. Mary's or the Diocese of Rockville Centre is either engaged in interstate commerce or are State institutions or act under color of State law. Private parochial elementary schools are not institutions which fall under the purview of 42 USC Section 2000 (a).

42 USC Section 2000(d) pertains to institutions which have federally assisted programs. The plaintiff must allege facts showing deliberate indifference to student on student harassment in order implicate the school. Zeno v. Pine Plains Cent.

16

Sch. Dist., 702 F.3d 655, 666 (2nd Dep't 2012).  The plaintiff must show four (4) things in order for the acts of third-parties to be imputed to the school.  They consist of one (1), substantial control two (2), severe racial harassment, three (3) actual knowledge and four (4) deliberate indifference.  Substantial control is defined as when the harassment occurs on school grounds and during school hours.  Constructive notice is not enough to state a claim and as such any claims that the institutional defendants should have known are insufficient.  Deliberate indifference is only if the actions taken by the school are clearly unreasonable under the circumstances. In making the determination the court must always accord sufficient deference to the schools response.  (Zeno, 65 – 66).

D.T. v. Summers Cent. Sch. Dist., 588 F.Sup.2d 485 (S.D.N.Y. 2008) is also a case involving student on student harassment.  The plaintiff sued the school district for emotional harm due to a racist environment under 40 USC 2000(d).  The deliberate indifference required under the statute must be to such an extent that it is deemed racially motivated.  D.T., at 493.  There can be no finding of knowledge where a student does not tell his or her parents or teachers.  D.T., at 494.  The Court further defined deliberate indifference as when the response is clearly unreasonable and when the remedial action occurs after a lengthy unjustifiable delay.  D.T., at 495.  Here, the facts indicated that the institutional defendants just like the defendants in D.T., acted immediately.  Once again the Court advised that it should remain skeptical as to arguments that the punishment was not severe enough.  The Supreme Court has specifically rejected the argument that the victim has a right to make remedial demands.  Recipients of federal funds do not have to remedy harassment but merely respond in a manner that is clearly not unreasonable.  Citing Davis Next Friend LaShonda D. v. Monroe County Board of Ed., 526 U.S.629,

119 S.Ct.1661 (1999).   Finally, the Court noted that it should refrain from second guessing school administrators in disciplinary decisions. <u>D.T.</u>, at 496.

## <u>CONCLUSION</u>

It is respectfully submitted that under the facts and circumstances of this case, there are no alleged facts which if true would be sufficient to make the institutional defendants state actors under Sections 1983, 1985 and 1986.   As such these claims must be dismissed.   Furthermore, claims under Section 1983 are subsumed into claims under 42 USC 2000(d) when based upon the same facts and circumstances.   Section 1983 must be dismissed by operation of law.   The institutional defendants do not fall within the purview of 42 USC Section 2000(a) by definition.   Finally, the plaintiffs have not pleaded sufficient facts to satisfy the four (4) requirements with respect to claims brought under 42 USC Section 2000(d) which includes substantial control over the acts of third-party, actual knowledge of the wrongful acts and deliberate indifference.   No facts have been asserted as to the plaintiff **D.D.M.** and he is therefore not a proper party to the action. Claims on behalf of **D.D.M.** should be dismissed and his name should be removed from the caption at the very least.

Based upon the foregoing it is respectfully requested that the Court grant the within defendants' motion for dismissal pursuant to FRCP 12(b)(1) and (6) in its entirety and for such other and further relief as this Court may deem just and proper.

Dated: Great River, New York
       October 1, 2018

Yours, etc.,

_____
JOSEPH M. NADOR, ESQ.

JMN:vp
Encl.
[M100118MEM]

19